IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ANDREA JOHNSON                                                                                          PLAINTIFF

v.                                            Case No. 4:14-cv-04078

JOHN W. WALKER, P.A.                                                                                 DEFENDANT

## ORDER

Before the Court is the Motion for Summary Judgment filed the Defendant John W. Walker, P.A. (ECF No. 14). Plaintiff Andrea Johnson has responded to the motion. (ECF No. 18). Defendant has replied. (ECF No. 24). The Court finds this matter ripe for its consideration.

### I. Background

Andrea Johnson brought a civil rights lawsuit against the Texarkana School District in January 2009. The Arkansas Education Association (AEA) contracted with John Walker to represent Johnson in her lawsuit for $220.00 an hour, to be paid by the AEA, who would be reimbursed if there was a subsequent award of attorneys fees. Johnson obtained a successful $500,000 verdict on September 29, 2011. After the Texarkana School District filed a Notice of Appeal, the case was mediated and settled by the parties. As part of that settlement, the Texarkana School District delivered to Walker a settlement check made payable to both Johnson and Walker. Johnson alleges that her name was endorsed on the check without her consent or authorization, and Walker negotiated the check and retained $265,000.00, claiming the amount was for his contingency fee in the lawsuit. Johnson alleges that she and Walker had no valid contingency fee agreement, and that he had already been paid $76,650.48 by the AEA for his representation. Johnson filed this lawsuit against Walker, alleging breach of fiduciary duty, deceit, conversion, and breach of contract. She claims she is entitled to the $265,000.00 Walker withheld as his fee. Walker asserts that the parties had a specific agreement regarding fees and distribution, and that Johnson is now "retracting" her agreement to pay the contingency fee.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56 "mandates the entry of Summary Judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Rule 56 specifically provides that Summary Judgment shall be entered when "the pleadings, depositions, Answers to Interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A scintilla of evidence in support of the nonmoving party's claim is not sufficient to successfully block Summary Judgment and, instead, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## III. Discussion

Walker asserts that the undisputed material facts entitle him to summary judgment. He asserts that (1) the parties had a binding and enforceable contract, (2) Johnson has waived the right to renege on the contingency fee contract, and (3) promissory estoppel warrants that he keep the funds.

### A. Contract

Walker first argues that the undisputed facts demonstrate that the parties had an enforceable oral contract. Even if there is not, he asserts that there is a specific and detailed written contingency fee contract in the form of the mediation settlement, letters, and emails. Johnson responds that a written contract is required for contingency fee agreements. She asserts that even if a written contract is not required, there are genuine issues of material fact regarding whether a valid and enforceable contract exists.

The parties agree that they did not have a written contingency fee agreement. Arkansas has not

definitively answered whether an oral contingency fee contract is enforceable. The Arkansas Professional Rules of Conduct require that contingency fee contracts be in writing, and they must delineate the various contingencies and the accompanying fees. Ark. R. Prof. Cond. 1.5(c). In the preamble to the Rules of Professional Conduct, the Committee defines the "scope" of the rules: "Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." The Arkansas Supreme Court agrees that evidence of a violation of the rule, alone, should not be used as a basis for civil liability, nor for a presumption that a legal duty has been breached. *See Orsini v. Larry Moyer Trucking, Inc.*, 833 S.W.2d 366 (Ark. 1992).

In *Hotel Associates, Inc. v. Rieves, Rubens and Mayton*, 435 S.W.3d 488 (Ark. 2014), the Arkansas Supreme Court found that, under the "unique facts" when there was no dispute over the existence and the terms of an oral contingency fee agreement nor an allegation that the fee was unreasonable, the agreement was enforceable according to its uncontested terms. The facts of this case are similar. The terms and existence of the oral fee agreement between Walker and Johnson are not disputed. Johnson stated in her deposition that, during jury deliberations of her trial, Walker discussed the 40% contingency fee agreement with her. (ECF No. 19-15). She agreed to this fee. (ECF No. 19-17). After trial, she sent an email to Mr. Walker to "inform/notify" him that she was "retracting [her] verbal statement on the 40% of the damages for fees." (ECF No. 17-1, Ex. 2B). Johnson does not allege that she misunderstood Walker that he said something else. Therefore, the Court finds that, under these undisputed facts, the agreement is not unenforceable solely on the basis that it is oral.

Instead, Johnson alleges that the oral agreement is unenforceable due to misrepresentations used by Walker to induce her into agreeing to the contingency fee. Unlike the parties to the oral contingency fee agreement in *Hotel Associates, Inc.*, who had a "long-term professional, as well as personal,

3

relationship," Johnson testified that she had never met Walker prior to trial. (ECF No. 19-13). Additionally, Johnson asserts that when Walker approached her about the contingency fee during jury deliberation, he told her that the fee was necessary to guarantee he was paid, since Johnson was not in good standing with the AEA. (ECF No. 19-17). Based on that representation, Johnson agreed to the contingency fee. (ECF No. 19-17). She now asserts that this "misrepresentation fails to form the basis for any alleged oral contingent fee agreement." (ECF No. 19, p.7).

  In some cases, a party's performance may be excused under a contract because of fraudulent and material misrepresentations by the other party. After demonstrating that a contract existed, the burden is on Johnson to prove that she is excused from the contract because of the fraudulent misrepresentations. *Nelson v. Cowling*, 91 S.W. 773, 113 (Ark. 1906). In order to prove fraud, Johnson must show:(1) that the alleged fraud was material to the contract; (2) that the fraud was injurious to the parties; (3) that Walker intended to induce her to act in reliance on the misrepresentation; (4) that she actually and justifiably relied upon the misrepresentation; and (5) that she sustained damages. *Nicholson v. Simmons First Nat'l Corp.*, 849 S.W.2d 483 (Ark. 1993).

  There is a disputed issue of fact regarding whether the oral contingency fee agreement is valid on the basis of fraudulent and material misrepresentations by Walker. Viewing the facts in a light most favorable to Johnson, she is entitled for a jury to determine the existence of the alleged misrepresentations.

  Walker next argues that there was a specific and detailed written contingency fee contract in the form of the mediation settlement, letters, and emails. The Mediation Settlement Agreement states as follows: "TASD will pay the amount of Seven Hundred Fifty Thousand Dollars ($750,000), of which Four Hundred Twenty-Five Thousand ($425,000) shall be paid as damages, fees and costs by certified check payable jointly to Mrs. Johnson and John W. Walker, P.A. and paid to John W. Walker, P.A., and

the gross amount of $325,000, from which TASD will withhold all usual and customary withholding taxes, shall be paid by net check payable to Mrs. Johnson and delivered to Mrs. Johnson." (ECF No. 17, Ex. 2E). Both Johnson and Walker signed this agreement, along with representatives of the Texarkana School District on March 10, 2012.

In a March 29, 2012 letter from Walker to Johnson, he includes within it a check payable to Mrs. Johnson in the amount of $204,721.32 (the amount of $325,000 with customary taxes withheld). He states that he was depositing the other check for $425,000 into the trust account, and that he would thereafter send her a check for $143,000, the difference between the total amount, $425,000 and his fee of $282,000.[1] (ECF No. 17, Ex. 2F). Walker requested Johnson's sons' social security numbers, and she subsequently sent that information via email. (ECF No. 17, Ex. 2G). On April 4, 2012, Walker sent Johnson the check for $143,000. He also sent two checks which he had made payable to her sons for $7,500.00 each and a copy of a check for $3,000 which he had sent to her previous attorney. Walker's stated fee of $282,000 minus the $15,000 paid to Johnson's sons and the $3,000 paid to Johnson's previous attorney equals $264,000, the approximate amount Johnson is claiming in this lawsuit.

In a letter from Johnson to Walker on May 23, 2012, Johnson indicates that she was aware that Walker said to her at some point that his charge was 40%, but that she did not feel like that was a discussion he should have with her since she did not retain him. (ECF No. 17, Ex. 2K). She says that even at the mediation her husband questioned Walker's retention of the 40% award. (ECF No. 17, Ex. 2K). The mediation agreement does not include the 40% fee term. The evidence before the Court indicates, in a light most favorable to Johnson, that the documents exchanged subsequent to mediation evidence that an agreement was made, but do not overcome Johnson's allegations that the agreement

---

[1]The Court is unclear, based on Walker's March 29, 2012 letter to Johnson, whether his stated fee was $280,000 or $282,000. (ECF No. 17, Ex. 2F).

5

was made based on a fraudulent misrepresentation. Therefore, these subsequent documents do not sufficiently demonstrate that there was a valid and enforceable contract between the parties on which the Court can make a ruling as a matter of law.[2]

### B. Waiver

Walker next argues that Johnson has waived her right to reject the agreed contingency fee contract. Johnson responds that she has timely filed her claims for breach of fiduciary duty, conversion, deceit, and breach of contract.

Arkansas law holds that the waiver of a breach of contract must be voluntary, knowing, and intentional. *All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 517 (8th Cir. 2009); *see also* 13 Sarah Howard Jenkins, Corbin on Contracts § 67.12(1) (rev. ed. 2003) ("Without some statement or expression of an intent to discharge, merely proceeding with performance in spite of nonfulfillment of some condition precedent by the other party is not operative as a discharge of an existing right to damages for such nonfulfillment."). Walker asserts that Johnson waived her right to renege on the contingency fee because she accepted legal services from the John Walker Law Firm and received the benefits, agreed to the mediation settlement with knowledge of the 40% contingency fee, did not immediately object to letters sent by Walker describing the distribution of the proceeds, and then retained the settlement funds.

Johnson's letter demanding an additional payment of the settlement money was made approximately seven weeks after the checks were sent to her. Her lawsuit was brought within the time permitted to bring a lawsuit on a claim for breach of fiduciary duty, conversion, deceit, and breach of

---

[2]The fact that Walker did not retract his 40% fee agreement, and that Johnson was aware of the 40% agreement at the settlement does not make the fee agreement valid as a matter of law. A disputed issue of fact remains as to whether, when the agreement was made during jury deliberations at trial, Walker made a fraudulent material misrepresentation. The evidence does not support a subsequent "meeting of the minds" as a matter of law.

contract. The Court finds that the undisputed facts do not demonstrate that Johnson voluntarily, knowingly, and intentionally abandoned her right to contest the terms of the agreement.

## C. Promissory Estoppel

Finally, Walker asserts that the doctrine of promissory estoppel precludes Johnson from now attempting to prevent the John Walker Law Firm from receiving its contingency fee payment. Under Arkansas law, promissory estoppel requires that the plaintiff clearly show four elements: "(1) the making of a promise, (2) intent by the promisor that the promise be relied upon, (3) reliance upon the promise by the promisee, and (4) injustice resulting from a refusal to enforce the promise." *In re Hilyard Drilling Co.*, 840 F.2d 596, 602 (8th Cir. 1988); *see also K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, 280 S.W.3d 1, 14 (Ark. 2008). Johnson asserts that Walker misrepresented facts to induce her into making a promise to him to pay a 40% contingency fee. Whether there was reasonable reliance by Walker on those facts is a question of fact. *See Van Dyke v. Glover*, 934 S.W.2d 204, 209 (Ark. 1996). A reasonable factfinder could conclude that either it was unreasonable for Walker to rely on the promise based on misrepresentations, or that justice does not require the enforcement of the promise under those circumstances. Therefore, summary judgment on the basis of promissory estoppel is inappropriate.

## IV. Conclusion

Accordingly, Defendant's Motion for Summary Judgment (ECF No. 14) is **DENIED**, as disputed issues of fact remain for resolution at a trial.

**IT IS SO ORDERED**, this 1st day of May, 2015.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge